# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **STEVEN NELSON** | **PLAINTIFF** |
| v. | No. 3:18-cv-278-BJB-RSE |
| **COSTCO WHOLESALE CORPORATION, ET AL.** | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER

After a visit to Costco, Steven Nelson drove one of the store's electric scooters to the edge of a curb that divided the sidewalk from the parking lot. The scooter tipped over the curb, spilling Nelson from the sidewalk onto the parking lot. No one saw the accident, and no one even purports to know exactly how or why it happened.

Nelson suffered injuries that required treatment at a nearby hospital. To recover damages for his injuries, pain, and suffering, he sued Costco. His lawsuit alleges that the store breached the duty of care it owed customers by creating an unreasonably dangerous condition on its premises—specifically, a convergence of the sidewalk and curb that was unsafe for scooters. In support of Nelson's claim, Jerry Birnbach, a "Store Designer, Site Planner and Retail Safety Expert," proposes to opine that "Costco did not construct a curb cut in conformance with" local, industry, and ADA regulations given "the utilization of the exterior sidewalk" by scooters, and that this non-compliance caused the accident. Birnbach Report (DN 65-6) at 1. Costco disclosed its own expert witness, Catherine Peterman, who would testify that Costco's design is compliant, safe, and did not contribute to Nelson's fall.

Now that discovery is complete, the parties have filed three motions resolved in this opinion. First, Nelson asks the Court to limit Peterman's testimony to avoid improper legal conclusions. Second, Costco seeks to disallow Birnbach's testimony entirely. And third, Costco requests summary judgment (primarily) on the ground that without Birnbach's testimony, no record evidence would support a jury finding that a dangerous condition on its premises caused Nelson's injury.[1]

Federal Rule of Evidence 702 requires that expert witnesses be qualified in their areas of testimony, and that their testimony provide helpful and reliable opinions based on facts and data. Aspects of both experts' proposed testimony fall short of that standard here. Birnbach, in particular, is unqualified to render opinions on scooter and design safety, and unable to identify a reliable, factual basis for other opinions regarding Costco's compliance and duty of care with

---

[1] Costco's *Daubert* motion also asks the Court to exclude or limit the testimony of Nelson's medical expert, Dr. Changaris. Costco's objections primarily relate to the weight due his opinions in light of other alternate causes that Dr. Changaris didn't purport to rule out. Resolving that dispute, however, is unnecessary to dispose of the pending motions.

respect to this accident. Peterman, by contrast, directly applied relevant code and industry standards to the spot in question. Given this record—or lack thereof—Nelson lacks any support for his position that Costco breached a duty by "creat[ing] a[n] unsafe and hazardous shopping venue." *Id.* at 6. Therefore, the Court grants Costco's motion to exclude, in part, and grants Costco's motion for summary judgment.

## RECORD EVIDENCE

The parties do not contest what happened to Nelson at Costco—only whether Costco's sidewalk was unreasonably dangerous and caused Nelson's injury. The events described here are drawn from the depositions taken in this case and cited in the parties' briefs.

Steven Nelson and a friend, Breck Holt, went shopping at a Costco in Louisville in April 2017. Nelson Deposition (DN 59-3) Tr. 8:2–4. Nelson drove a motorized scooter that Costco supplied at the entrance of the store. *Id.* at 39:2–4. After they finished shopping, Holt walked to retrieve his vehicle from the parking lot. Nelson Dep. at 8:10–12. Nelson remained on the scooter near the store's entrance. At some point while he waited, Nelson drove the scooter 20 or 30 feet, where the scooter tipped over the edge of the concrete sidewalk onto the parking lot a few inches below. Holt Deposition (DN 64-7) Tr. 20:21–22. Nelson fell out of the scooter onto the ground, broke his leg, and possibly suffered a traumatic brain injury. Response to the Motion for Summary Judgment ("MSJ Response") (DN 64) at 4–5. An ambulance took Nelson to a nearby hospital for treatment. *Id.* at 5.

No eyewitnesses saw the accident. No surveillance footage captured it. And Nelson himself cannot recall the accident. Nelson Dep. at 8:13–14. He does remember that he was capable of operating the scooter, which was functioning properly that day. *Id.* at 40:17–41:1.

Nelson and Holt had shopped at this Costco several times without incident. *Id.* at 39:12–17. Afterwards, Holt typically pulled the car around while Nelson waited for him by the store entrance. On the day of the accident, however, a minivan was parked where the pair typically loaded Holt's car: alongside the store's entryway, where the sidewalk runs level with the parking lot for several car lengths. MSJ Response at 4. The minivan blocked a portion of the entryway, and Nelson drove the scooter away. Birnbach Addendum (DN 41-1) at Figure 1; Nelson Dep. at 44:10–13.

Although Nelson doesn't remember what happened, he would've driven past a garage door providing access to a storage area for shopping carts. Past the carts, the pathway sloped back up approximately 4 to 6 inches from the level of the parking lot to the level of the sidewalk. There the sidewalk resumed, forming a vertical curb of 4 to 6 inches in height, dividing the higher sidewalk from the lower parking lot. Birnbach Addendum at Figure 3D. The curb was painted red. Peterman Deposition (DN 62-2) Tr. at 14:24–25.

This is where Nelson fell, and where the evidentiary clues run out. The parties each speculate about what caused Nelson to fall. Birnbach believes that Nelson drove up the sloped section of the sidewalk, straddling the curb: with one side of his scooter remaining on the parking lot asphalt and the other ascending to the raised sidewalk. As the curb rose, according to Birnbach,

2

the scooter must have tilted to one side, eventually tipping over and causing Nelson to fall onto the lower parking-lot surface. Birnbach Deposition (DN 65-4) at 49:5–50:22. Costco, for its part, agrees that Nelson's cart tipped over in this general vicinity, but contends that no evidence tells us how that happened. Motion for Summary Judgment Memorandum ("MSJ") (DN 59-1) at 5.

After Nelson fell, Holt returned and asked what had happened. Nelson responded that "he guessed he drove off the curb," according to Holt. Holt Dep. at 36:5–18. (Nelson, again, does not remember this—or anything else until he traveled by ambulance to the hospital.) Nelson Dep. at 8:14–24.

So we know Nelson's scooter tipped over the side of the curb, but we don't know how or why. The question on summary judgment is whether the record would support a finding that Costco created an unreasonably dangerous condition by designing the store's exterior in this manner and allowing Nelson to use the scooter near the curb where he fell. MSJ Response at 1; MSJ at 6.

## THIS LITIGATION

Nearly one year after the incident, Nelson filed a complaint against Costco in Jefferson (Ky.) Circuit Court. State-Court Complaint (DN 1-2) at 1. Costco timely removed the case to federal court on the basis of diversity jurisdiction. Notice of Removal (DN 1) at 1 (citing 28 U.S.C. §§ 1332(a), 1441(b)). During discovery, Nelson disclosed Jerry Birnbach as an expert regarding Costco's duty of care and breach—essential elements of Nelson's negligence claim—and Dr. David Changaris as an expert on Nelson's neurological injuries.

Birnbach's expert report reached four conclusions:

1. "It was incumbent upon the Costco store to follow its policy and Industry Standards, to conduct timely sidewalk inspections during operating store hours, identify hazardous conditions, and provide an immediate cure."

2. "According to the well-known, generally accepted industry safety standards[,] protocols and procedures, this Store Manager's responsibility to oversee and provide a safe and hazard-free shopping venue for their customers was not complied with."

3. "This is a deviation from well-recognized, generally accepted and Retail Industry wide parking lot and sidewalk safety practices, which included the minimal and reasonable customs and practices in the industry, as well as, ADA and IBC local building code policies and procedures, as discussed in this report."

4. "At the time of the sidewalk and parking lot design review process, the foreseeable hazard to direct scooters and customers in the final path of travel. [sic] Additional compliant curb cuts, level landings, curb construction, painted walkways and curb surfaces, sidewalk widths, signs q [sic] calling out for caution when operating the scooter in the parking lot were not adequately addressed in the final design build out."

Birnbach Report at 7.

As for causation, Birnbach offered that Nelson "incurred an incident" "[a]s a result of a sidewalk ramp design defect including code violations, curb cut irregulates [sic], non-compliant exterior circulation patterns, lack of (on the scooter itself) adequate safety notice on the scooters for operation and use, lack of visual notice of hazardous sidewalk conditions, and non-compliance to the local Building Code and the American Disability Act regulations." Birnbach Report at 1. No single factor constituted an unreasonably dangerous condition, in Birnbach's view; rather, the "totality of the circumstances" created the dangerous "interaction" between the cart and the curb. Oral Argument Transcript (DN 75) at 3–4. Nelson's counsel explained the theory of his case as resting on the aggregate effect of these issues, leading Nelson to operate the scooter in a dangerous area, without adequate warning, and ultimately fall onto the parking lot. *Id.* at 4, 14–15.

Costco's expert, Catherine Peterman, stated in her report and deposition testimony that Costco met applicable industry standards of safety and did not allow a hazardous condition to exist that caused Nelson's accident. Nelson seeks to exclude her opinions because the only factor she allegedly considered when determining Costco's fault was the structural composition of the sidewalk. Nelson Motion to Exclude (DN 62) at 4.

The testimony of the two experts differs significantly, and the gap grows greater still in light of the parties' arguments that some or all of their testimony should be excluded. Because the decisions whether to allow the opinion testimony of Birnbach and Peterman significantly affect the evidence before the Court on summary judgment, the Court considers the motions to strike first.

## MOTIONS TO EXCLUDE EXPERT TESTIMONY

### I. Motion to strike Birnbach

Federal Rule of Evidence 702 allows opinion testimony by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" if the testimony satisfies four conditions connecting the expertise and the litigation:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has interpreted this rule to assign trial judges a "gatekeeper" function in determining whether proposed expert testimony is sufficiently reliable and relevant for the jury to consider. *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993)), abrogated on different grounds, *A.K. by and Through Kocher v. Durham School Services, L.P.*, 969 F.3d 625, 630 (6th Cir. 2020). Expert testimony is relevant when it will assist the trier of fact in understanding the evidence or determining a material fact in question. *See Daubert*, 509 U.S. at 592–93. And it is reliable when grounded in valid methods and procedures that support the trustworthiness of the testimony. *Id.* at 590 n.1. The Federal Rules and precedents interpreting them afford trial courts

"considerable leeway in deciding … how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

    **A. <u>Expert Report</u>.** Measuring the four conclusions in Birnbach's report against the Rule 702 standards reveals serious shortcomings in each. Despite citing various out-of-context diagrams and standards, Birnbach's opinions are fundamentally subjective; they lack the reliability and objectivity provided by an expert's application of an established discipline or agreed principles to issues outside the understanding of a lay jury.

    Many of these same shortcomings supported the Third Circuit's recent affirmance of the exclusion of another proffered "retail-safety expert"—and apply equally here. That witness, like Birnbach, "provided no factual basis for why [some materials] were relevant, while others were not." *Yazujian v. PetSmart*, 729 F. App'x 213, 216 (3d Cir. 2018). The *Yazujian* witness, like Birnbach, offered "no evidence that [h]is method was tested, accepted, or used by other experts in the field of retail safety." *Id.* (citing *Kumho Tire*, 526 U.S. at 151). "Accordingly," the Court of Appeals "agree[d] with the District Court that [the expert] was not qualified as an expert in retail safety, and that his testimony was the product of methods and principles that were not reliable. [The witness's] testimony would have constituted no more than 'subjective belief or unsupported speculation,' and would not assist the jury in understanding or determining a fact in issue, as required under Rule 702 and *Daubert*." *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742).

    Birnbach's first conclusion—that it was "incumbent" on Costco to follow standards calling for "timely sidewalk inspections" and identification of "hazardous conditions" and "cure[s]"—is an irrelevant opinion unconnected to either the facts or any purported (and unidentified) "Industry Standards." Birnbach Statement at 7. Neither party contends that a failure to conduct routine inspections caused Nelson's accident. In fact, Nelson elsewhere contends that the design, not the maintenance, of this portion of the premises is to blame. *See* Oral Arg. Tr. at 23:1–21.

    The second conclusion—that Costco did not comply with "generally accepted industry safety standards, protocols, and procedures"—fails to identify those standards or describe Costco's alleged violations. Birnbach states that these standards are "well-known," and require the "Store Manager" to "oversee and provide a safe and hazard-free shopping venue." Birnbach Report at 7. The Store Manager's responsibility in the context of this incident, however, is neither "well-known" nor explained anywhere in the record, or the expert report, or his deposition. Providing a "safe and hazard-free" premises, *id.*, moreover, is at best a gloss on a generic *legal* standard applicable to premises liability, not "specialized knowledge" that would "help the trier of *fact*," Fed. R. Evid. 702 (emphasis added). Despite reviewing Birnbach's report, addendum, and deposition, the Court remains in the dark about how the proffered expert would explain to a jury the facts indicating which standards applied to Costco and whether Costco complied with them.[2] *See Antioch Co. Litig. Tr. v. Morgan*, 633 F. App'x 296, 300 (6th Cir. 2015) (expert opinion based

---

[2] A significant portion of Birnbach's report focuses on the accessibility of Costco's handicap parking spaces and the location of stray shopping carts. Birnbach surmises that the carts could have obstructed the path Nelson traveled toward further flung handicap spots. Birnbach Report at 2, 5–6. Neither point is relevant. Nothing indicates that Holt parked in a handicapped spot, or that the safest spots were unavailable, or that Nelson traveled past stray carts en route to handicapped spots. *See* Birnbach Dep. at 81:11–14.

primarily on experience must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts").

Birnbach's third conclusion fares little better. "This is a deviation," he states (without clarifying what "this" refers to), from "parking lot and sidewalk safety practices, which included the minimal and reasonable customs and practices in the industry, as well as, ADA and IBC local building code policies and procedures." Birnbach Report at 7. Again, his report does not identify the "generally accepted" safety practices or any relevant provisions of the Americans with Disabilities Act (ADA) and International Building Code (IBC). Birnbach says those provisions are "discussed in this report." *Id.* Presumably that means the Addendum: a 16-page compilation of Google images, superimposed diagrams, crisscrossing arrows, and sometimes illegible blocks of text or citations. Many of these materials lack any indication of their source. Birnbach Addendum (DN 41-1). Nowhere do we find the sort of explanation that might conceivably help a jury understand a relevant industry standard as applied to the facts of Nelson's case. Nowhere does Birnbach show the location of the accident, identify how that spot varied from an applicable policy or custom, or explain how any violation caused Nelson's accident. Instead, Birnbach offers a gestalt critique of Costco's design of its sidewalks, doors, and handicapped parking. This does not connect Birnbach's professed expertise with the facts of the case, or with a jury's consideration of whether Costco breached its duty of care according to relevant regulatory or industry standards. *See Powell v. Tosh*, 942 F. Supp. 2d 678, 687 (W.D. Ky. 2013), adhered to on denial of reconsideration, *Powell v. Tosh*, No. 5:09-cv-121, 2013 WL 1878934 (W.D. Ky. May 3, 2013) ("[An] expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.").

His fourth conclusion offers more of the same, though targeted to the "design review process" and "final design build out." Birnbach Report at 7. Again, Birnbach lists a grab-bag of alleged actions that would've violated unidentified standards with unidentified connections to the accident. "Additional compliant curb cuts, level landings, curb construction, painted walkways and curb surfaces, sidewalk widths, [and] signs." Compliant with what? Based on what retail merchandise expertise? Causing Nelson to fall why? Birnbach's qualifications to opine about the "design review process" and "final design build out" are doubtful to begin with. He admits that "anything that's structural is out of my realm of ability" and that the "final engineering" and "final submittal to the municipalities" "would have to be done by a registered architect or … licensed engineer," which he is not. Birnbach Dep. at 37:4–8. (Birnbach has a degree in architecture, but did not pass the licensing examination either time he sat for it. Birnbach Dep. at 21:12–22:14.) Nor does he have any basis to opine on what *did* happen during the design build out or regulatory approval process—because he didn't look into it. *Id.* at 12:9–13:8.

No discipline, expertise, or other "specialized knowledge" stands behind Birnbach's own opinions on what a better store design might've looked like. Nor are those recommendation connected to the actual accident. So the Court, in its gatekeeper role, cannot conclude that Birnbach's disclosed opinions would offer a jury relevant or reliable assistance as it sought to determine whether Costco violated its duty to offer reasonably safe premises. *See Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 762 (E.D. Mich. 2010) (an expert's "conclusions

6

must be connected to the existing data by more than the *ipse dixit* of the expert"). The Court therefore holds that Birnbach is unqualified to offer the opinions disclosed in his expert report.

**B. Deposition Testimony.** At his deposition, Birnbach attempted to bolster and expand on the conclusions disclosed in his expert report. Beyond the four opinions discussed above, he listed seven violations that he believed contributed to Nelson's fall:

1. Inadequate instructions regarding use of the motorized scooter;
2. Insufficient visual notice instructing scooter operators to use ramps from the parking lot surface to the top of the sidewalk;
3. An improperly constructed curb;
4. Less than 36 inches of unobstructed width on the sidewalk;
5. No loading area for handicapped patrons;
6. Allowing automobiles to stand or park at the curb; and,
7. Inadequate reporting procedures.

Birnbach Dep. at 91:18–99:1. These asserted violations expand the opinions Birnbach proposes to offer, *contra* Fed. R. Civ. P. 26 (a)(2)(B)(i), without in any way addressing the deficiencies identified above in his report.

**1–2. Scooters.** Birnbach lacks the requisite qualifications to testify about Costco's motorized scooter policy. "To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). Although courts should interpret this requirement "liberally," a witness is not "an expert simply because he claims to be." *Id.*

Nelson admits that Birnbach lacks a "specific scooter endorsement." Response to Motion to Strike (DN 65) at 11. He has no technical training or licensing in this aspect of store design. Advising stores on scooter usage, he says, is "part of what his design experience encompasses," and some of his clients are retailers that provide electric scooters to their customers. Oral Arg. Tr. 9:22. This casts an overbroad net. Birnbach has no specialized knowledge about the operation of motorized scooters or the design, labels, instructions, or signage that stores should and do use to make them safe for patrons. *Id.* at 17–18. The deposition and report contain no description of his qualifications, education, or experience in this area. Nor does the record contain any evidence that Birnbach has worked with stores on their scooter warning labels or usage in the past. The Sixth Circuit has held "that unqualified individuals could not broadly testify about an area in which they possessed no specialized knowledge," and Nelson hasn't pointed to anything that would justify his testimony regarding Costco's instructions or notice regarding the scooter at issue. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004).

Nelson argues that *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294 (6th Cir. 2007), weighs in favor of admitting Birnbach's scooter opinions. In that case, a private security contractor was deemed qualified to offer opinions as an expert in threat assessment, specifically "commercial bus line threat assessment," despite his lack of specific experience in bus security. *Id.* But that witness undoubtedly had expertise in assessing security threats, as well as experience in the transportation industry. *Id.* Birnbach lacks any such connection to the aspects

7

of Costco's use of scooters that he critiques, and his experience in "retail store design" lies far from the realm of scooter safety warnings.

Equally important, Nelson hasn't drawn any connection between Birnbach's background (which is discussed sparingly in the report) and the specific opinions he proposes to offer on this subject. In any case, Birnbach's specific opinions are largely beside the point. He contends that Costco (like other stores) should've adopted a policy and posted warning signs prohibiting carts from being driven outside. But Costco's carts already display signs requiring "in store use only." Birnbach Report at 6. Birnbach further suggests that all the scooter operator warnings should have been provided "in one place" and that Costco could have provided better signage regarding the proper use of scooters around the exit. He does not, however, explain how Costco's slightly different decisions contributed to Nelson's accident, or why they are deficient under any relevant industry standard. To the contrary, Birnbach admits Costco did not violate any code provision in this respect. Birnbach Dep. at 94:13–15.

Allowing him to testify regarding scooter use and labeling would not reflect any reliable expertise on his part or illuminate any relevant fact for the jury. *See Elswick v. Nichols*, 144 F. Supp. 2d 758, 766 (E.D. Ky. 2001), aff'd sub nom. *Elswick v. Pikeville United Methodist Hosp. of Kentucky, Inc.*, 50 F. App'x 193 (6th Cir. 2002) ("The qualification, however, must match up with the subject matter about which the expert is to testify; for example, an aeronautical engineer could testify about how bees fly based on his education and training in flight principles, but that same engineer could not testify about whether bees always take off into the wind because his training in aeronautics would not qualify him to answer that question.").

**3–4.** *Curb construction.* The Court also harbors serious reservations about Birnbach's qualifications to testify about the construction and width of the curb where Nelson fell. Birnbach describes himself as a "Store Designer, Site Planner and Retail Safety Expert." Birnbach Report (DN 65-6) at 1. He worked for more than 40 years on "retail store display design experience," which primarily involves merchandise display. Birnbach CV (DN 41-2) (describing experience with store displays). The bulk of Birnbach's CV relates his experience as a retail designer whose customers see increased sales revenue from his creative merchandising and improved store and design layouts. *Id*. His design work sometimes includes sidewalks and parking lots, but he admittedly cannot opine about anything structural. Birnbach Dep. at 10:19–11:24, 37:4–5. Birnbach lacks an "architectural license," could not submit sidewalk or parking lot designs to municipalities for approval, and describes no experience designing safe and code-compliant store exteriors. Birnbach Dep. at 21:6–8; 11:12–24. His testimony discusses code compliance in the abstract, but not any work with specific regulations and standards that would prove relevant here. *Id.* at 37:10–12.

A review of Birnbach's methodology reveals more serious concerns. Rule 702 requires an expert's testimony to rest on "sufficient facts and data." An "expert's subjective belief or unsupported speculation" will not satisfy that standard. *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997). Birnbach did not conduct an on-site examination of the accident site, but instead relied on photographs and Google images to assert that the curb was improperly constructed and less than 36 inches wide. Birnbach Dep. at 37–38. He never measured the slope or width of the sidewalk. *Id.* at 38, 77. He didn't physically inspect the sidewalk, *id.*, or review

Nelson's own account of the incident, *id*. at 41–42. Yet he asserted that the sidewalk failed to comply with (unspecified) ADA regulations. Birnbach Dep. at 89:3–8.

Birnbach's own testimony confirms the inadequacy of the factual basis he relied on to reach this conclusion. Fed. R. Evid. 702(b). When asked about the alleged defects in the sidewalk, Birnbach stated that what he observed "in limited photographs *appear[ed]* … to be out of compliance." Birnbach Dep. at 38 (emphasis added). Birnbach admitted that he never examined the building plans Costco submitted for municipal approval, which were prepared by licensed engineers and architects. *Id.* at 37. Birnbach's opinion about the rise of the slope "wasn't conclusive" because he could "only see it in one direction, so it wasn't really able to be validated." *Id*. at 99–100. And Birnbach couldn't see enough of the sidewalk to determine whether Costco improperly maintained the sidewalk. *Id.* at 100; Oral Arg. Tr. at 23:4–7. In other words, no facts or data would support testimony by Birnbach that Costco built a sidewalk that was too steep and too narrow.

Nelson responds that accident reconstruction experts routinely rely on photographic evidence and testimony. Response to Motion to Strike at 14. Perhaps they do. But that doesn't afford all experts a free pass regarding the sufficiency of their data and reliability of their methods. FRE 702(b)–(c). When asked about the width of the sidewalk, Birnbach stated, "short of being on the location, I cannot be 100 percent sure" it measured less than 36 inches. Birnbach Dep. at 73. He admitted he could not fully measure the slope without "visually seeing it." *Id.* at 100. And some of the figures and measurements in his reports are "extrapolate[d] because [he was] not physically there." *Id*. at 77.

This shortcoming is hard to overlook: we are talking about simple physical measurements of concrete objects in the real world. Why would the jury benefit from a witness's inferential opinion about how long a slab of concrete appears to be in a photo—when someone could just lay a tape measure across the real thing? Neither Nelson nor Birnbach offers any reason why conjecture is warranted here. Such testimony, if admitted, would surely obscure more than illuminate the facts for a jury.

Under Rule 702(b) and (c), a district court must confirm that "the factual underpinnings of the expert's opinion [are] sound." *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999). This the Court cannot do. And "[a]n expert's opinion is not relevant unless it is based on the actual facts of the case." *Jesa Enters. v. Thermoflex Corp.*, 268 F. Supp. 3d 968, 973 (E.D. Mich. 2017). The Sixth Circuit regularly upholds district court decisions to exclude expert testimony that is not based on sufficient facts or reliable methods. *See, e.g., Auto Indus. Supplier Emp. Stock Ownership Plan v. Ford Motor Co.*, 435 F. App'x 430 , 454 (6th Cir. 2011) (lack of personal knowledge about underlying data); *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (unreliable lack of independent verification or analysis regarding underlying data); *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing…."). Birnbach's speculative conclusions about curb construction and sidewalk width do not meet these standards.

**5–6.** *Handicap parking and loading.* Next, Birnbach opines that Costco needed a loading area for handicapped patrons and a policy preventing automobiles from standing or parking at the curb in front of the store. These add little to the jury's assessment of Costco's potential breach as it relates to Nelson's accident. Birnbach admits that neither critique violates a municipal ordinance or other code. Birnbach Dep. at 96:17–97:16. Instead Birnbach contends that Costco's loading area and curbside-parking policy represent "deviation[s] from well-recognized, generally accepted and Retail Industry wide parking lot and sidewalk safety practices." Birnbach Report at 7. But what are these practices? Where are they written down? Who generally accepts them? How and why did Costco depart from them? We do not know. We only have Birnbach's "*ipse dixit*". *See Meemic*, 717 F. Supp. 2d at 762.

Birnbach offers no basis for these parking-lot opinions—no theory, no method or error rate, no comparison with alternatives, and no pertinent code violations. Worse still, he all but ignores that Costco did in fact bar cars from idling in front of the store and advertised that policy on its signs. Birnbach Dep. at 2–9 (acknowledging policy but criticizing Costco's enforcement as insufficiently vigorous). Stripped of all trappings, Birnbach merely offers his personal view on what Costco should've done.[3] But without explaining or applying some method by which experts in his field assess whether stores have transgressed safety norms or rules, the Court (not to mention a jury) lacks a foundation to evaluate the relevance and reliability of his testimony. *See Conwood Co., v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) ("The district court must determine whether the evidence 'both rests on a reliable foundation and is relevant to the task at hand.'").

In any event, Nelson acknowledges that the parking lot design is "not the main issue" and may have had only a "minor effect." Oral Arg. Tr. at 28:9–10. Indeed, the consequences of any different parking-lot layout on this accident are entirely speculative. If the store instituted more handicap parking spots, as Birnbach suggests, would Nelson's scooter not have tipped over the curb? If the store created a separate handicap-loading area, would Nelson not have driven his scooter away from the car parked in the entryway? No evidence suggests a different result under these counterfactuals: Holt normally picked up Nelson at the entrance, Nelson Dep. at 39–40, apparently regardless of the availability of handicap parking or loading space.

**7.** *Reporting.* Birnbach's final opinion—that Costco lacked appropriate reporting procedures—is beside the point. Whether Costco adhered to an after-the-fact reporting system did not cause the accident in any way, as Birnbach admitted. Birnbach Dep. at 98:21–23. And Nelson offers no evidence of similar earlier accidents whose reporting might've averted this one. Birnbach's opinion on this point would prove entirely irrelevant to the jury's consideration.

---

[3] Some expert opinions are reliable based on personal experience not easily susceptible to testing, peer review, or external validation. In admitting such testimony, courts rely heavily on the expert's experience and qualifications. *See, e.g., First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (opinion on prudent banking standards derived from 40 years' experience in banking); *Flanagan v. Altria Grp., Inc.*, 423 F. Supp. 2d 697, 702 (E.D. Mich. 2005) (reconstructing lost insurance policies is not the type of opinion that can be tested or verified). As explained above, nothing in Birnbach's experience reflects the external-safety judgments he proposes to make here. And in any event, his testimony and report purport to rely primarily on unidentified industry standards, rather than his own personal expereince, in reaching those conclusions.

\* \* \*

Stepping back and surveying the whole of Birnbach's testimony, not once does he "cite[] tests, data, reports, written standards, or any other testable evidence to support any of [his] opinions." *Keyes v. Techtronic Indus. Factory Outlets*, No. 3:18-cv-671, 2020 WL 5592694, at *2 (S.D. Miss. Aug. 4, 2020) (excluding a retail safety expert's opinion as unreliable). Without such indicia of reliability, the Court has no basis to find that his "method was tested, accepted, or used by other experts in the field of retail safety." *Yazujian*, 729 F. App'x at 216 (excluding a retail safety expert who failed to define what standards he applied and conduct a sufficient examination of the store). Instead, Birnbach's report draws sweeping conclusions without properly explaining their factual basis in the field of "retail design and safety." *See Hayes v. MTD Prod., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007). For these reasons, the Court lacks a basis to conclude that Birnbach's opinions rest on anything more than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Because each condition identified by Birnbach fails some aspect of the Rule 702 requirements, he has no basis to testify that the totality of the circumstances created an unreasonably dangerous condition leading to Nelson's accident. The Court therefore holds his opinions inadmissible and excludes his testimony under Rule 702.

## II. Motion to strike Peterman

The Court applies the same Rule 702 analysis to the admissibility of the proffered expert testimony of Peterman, to which Nelson objects in part. Peterman draws five conclusions:

a) "The difference in elevation at the incident curb was clearly marked with red paint."
b) "The incident area met the requirements of the applicable code and ADA guidelines."
c) "Costco maintained the walkway, curb, and entrance with the applicable standards of care for pedestrian safety."
d) "Mr. Birnbac[h] failed to provide analysis or opinions regarding the alleged incident. Any opinions or analysis he produces concerning this matter should be disregarded as unscientific and unreliable."
e) "If Mr. Nelson was injured, it was not due to the actions or inactions of Costco."

Peterman Report (DN 46-1) at 4–5.

Peterman is a licensed architect with more than 20 years' experience in retail store design and construction. *Id.* at 7–9. She has designed many large retail stores and gas stations. Peterman Dep. at 16:2–6, 21:20–22:6 (Walmart, Big Lots, Pilot, Speedway, Marathon). This includes the layout for parking lots, sidewalks, and other exterior areas. Peterman Dep. at 16:7–15. Peterman has submitted her designs to municipalities for approval, requiring her to demonstrate compliance with local and federal building and safety standards. *Id.* at 27:15–28:15. She conducts on-site safety audits and investigates building code and ADA compliance. *Id.* at 16:16–21; Peterman Expert Report at 7–9.

Peterman applied her education, training, and experience in reviewing Nelson's accident. She reviewed photographs of the incident and then performed a site investigation to actually measure the areas involved in the incident. *Id.* at 12:23–13:6. As part of her investigation, she reviewed the ADA, Kentucky Building Code, and the Kentucky Fire Code to determine whether the incident area complied with these regulations. *Id.* at 13:18–22. Although Peterman's third conclusion discusses "applicable standards of care for pedestrian safety," she clarified during her deposition that she did not consider standards of care beyond the building codes and the ADA regulations. *Id*. at 15:13–20.

    **1.** ***Curb paint***. Peterman's first opinion—that the curb's elevation change was clearly marked with paint—is well within the lay knowledge of the jury. Therefore Peterman's testimony regarding an "opinion" as an "expert" is neither necessary nor helpful. *See United States v. Kilpatrick*, 798 F.3d 365, 380 (6th Cir. 2015) ("It is not 'helpful' when a witness, lay or expert, forms conclusions for a jury that the jurors are competent to reach on their own."); *see also* Fed. R. Evid. 702 (requiring "specialized knowledge"). Costco observes that nearly every witness has acknowledged that the curb was painted red. Response to Motion to Exclude (DN 63) at 2. Such uniformity about a basic fact pushes it outside the realm of "technical" or "specialized knowledge" that Rule 702 permits. Whether the curb's red paint satisfies relevant safety codes, however, is a fact underlying her second conclusion—regarding code compliance—and therefore could be discussed in that context. *See, e.g., Stallins v. Celebrezze*, 227 F. Supp. 138, 142 (W.D. Ky. 1964) (expert's testimony about subsidiary questions of fact are often "essential" in explaining the conclusion ultimately reached).

    **2.** ***Building code and ADA requirements***. The Court lacks any basis to exclude her second conclusion: that "[t]he incident area met the requirements of the applicable code and ADA guidelines." Peterman Report at 4. Nelson attempts to minimize this opinion as "unremarkable." Motion to Exclude (DN 62) at 4. Yet Peterman's qualifications, experience, and methodology lead logically to this conclusion, which bears directly on a subject that is both central to the breach determination and outside a juror's typical understanding. Peterman's qualifications and experience make her well situated to opine on this issue, and her on-site measurements instill confidence in the reliability and factual basis of her conclusions. Even Nelson acknowledges that "Peterman took proper measurements and used adequate methods to reach her opinion that Costco complied with Building codes." Reply to Nelson's Motion to Exclude (DN 66) at 1. He further "recognizes that Peterman is qualified to offer opinions related to building codes" and (cautiously) concedes that "she can even testify that the curb was properly maintained as designed." *Id*. This is appropriate and reliable expert testimony regarding building safety. *See Yazujian*, 729 F. App'x at 215–16.

    **3.** ***Maintenance***. Peterman's third conclusion—that Costco maintained the outdoor areas consistent with the "applicable standards of care"—is vague and legalistic. In her deposition, Peterman appears to equate these standards with the applicable building codes, real-world rules far more amenable to expert testimony than a witness's abstract perception of the "standard of care." Peterman Dep. at 15:13–20; *see also EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. cv 15-146, 2018 WL 1996797, at *19 (E.D. Ky. Apr. 27, 2018), aff'd sub nom. *EQT Prod. Co. v. Phillips*, 767 F. App'x 626, 632–33 (6th Cir. 2019) (excluding expert testimony based

on experience for failing to establish an "objective standard of care" as a benchmark for an alleged breach). To the extent she benchmarks the standard of care to code compliances, this third opinion would seem to largely restate her admissible second opinion: just as Costco's design *met* applicable code requirements (opinion 2), Costco also *maintained* the area in a manner consistent with code (opinion 3).

But if, as Nelson asserts, Peterman is referring to other undisclosed standards, the Court agrees that this is inappropriate. Such testimony would be objectionable for many of the same reasons Birnbach's allusions to unidentified industry or regulatory standards are inadmissible. *See* Part I above. Costco has disclosed no underlying facts or methods supporting Peterman's investigation or analysis regarding any undefined metrics. FRE 702(b)–(c). Any such testimony would be inadmissible at trial.

**4. *Birnbach rebuttal*.** The testimony of one expert contradicting another does not automatically render either expert's testimony unreliable. "[C]ontradictory fact or opinion evidence merely establishes a fact dispute." *Sanford v. Russell*, 387 F. Supp. 3d 774, 785 (E.D. Mich. 2019). Such a "battle of the experts" is properly resolved by the jury, which must "weigh the experts' testimony and decide accordingly." *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 WL 4239185, at *2 (W.D. Mich. Jan. 7, 2016). But while "an expert may critique the methods of another expert," *In re Heparin Prod. Liab. Litig.*, 803 F. Supp. 2d 712, 751 (N.D. Ohio 2011), "[a]n expert opinion on a question of law is inadmissible." *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir.2009); *see also U.S. ex rel. Martin v. Life Care Centers of Am., Inc.*, No. 1:08-cv-251, 2014 WL 4816006, at *3 (E.D. Tenn. Sept. 29, 2014).

Peterman's conclusion that Birnbach's opinions and analysis "should be disregarded as unscientific and unreliable," *see* Peterman Report at 5, falls into the territory of a legal, rather than a factual, conclusion. *See In re Heparin*, 803 F.Supp. 2d at 751 (an expert's statement that a counterpart's "methodology is flawed and not valid" would "stra[y] into a legal conclusion"). Such conclusions "invad[e] the province of the court to determine the applicable law and to instruct the jury as to that law." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir.1985). In this regard, Peterman's conclusion usurps the gatekeeping function of the Court. *See Mike's Train House*, 472 F.3d at 407. Courts may also appropriately exclude expert testimony that opines on terms that have a "separate, distinct, and specialized meaning in the law." *U.S. ex rel. Martin*, 2014 WL 4816006, at *3. In the *Daubert* context, "unreliable" and "unscientific" are such terms.

Although the Court excludes Peterman's conclusions on page 5 of her report and would limit her testimony accordingly, she is free to critique Birnbach's methods and the underlying facts and data he relied on, as she does on pages 3–4 of her report. *See In re Heparin*, 803 F.Supp. 2d at 751 (permitting one expert to critique the methods of another). Such criticisms go to the weight of the expert testimony and are reserved for the jury's consideration.

**5. *Causation*.** Peterman's opinion that Costco *categorically* did not cause any injury to Nelson, Report at 5, is too broad and abstract. Peterman does not tie this conclusion to any reliable analysis, based in her qualifications and experience, that could rule out any role for Costco. Such umbrella assertions sweep in potential issues that lie beyond Peterman's field of expertise and improperly encroach on the jury's responsibility to review the totality of the circumstances

contributing to the accident. *See* Peterman Dep. at 53:21–25 (admitting that unsafe conditions can exist even if the store complied with all building codes); *Hayes*, 518 F. Supp. 2d at 901 (excluding an expert whose testimony expanded from opinions to conclusory legal assertions). Although Peterman may speak to specific conditions or risks that fall within the purview of her expertise in architecture, building safety, and regulatory compliance, she is not in a position to offer a generic opinion that Costco had nothing whatsoever to do with Nelson's injury.

* * *

In sum, Peterman's opinions regarding Costco's compliance with building codes and other identified regulatory standards are admissible because they are rooted in her training, experience, and on-site examination. Those portions of her opinions are admissible. The remaining portions, however, fail to connect her qualifications to the questions facing the factfinder in this case and are therefore inadmissible.

## MOTION FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The non-moving party must then point to portions of the record supporting its position and demonstrating that a genuine dispute exists. *Id.* at 324.

### A. Kentucky premises-liability law

Under Kentucky law, the plaintiff in a negligence action must establish duty, breach, causation, and damages. *See, e.g., Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003). Duty is a question of law; breach and damages are typically questions of fact; and causation presents a mixed question of law and fact. *Id.* at 89. Costco, in conjunction with its *Daubert* motion to exclude Nelson's expert testimony, moved for summary judgment based on a lack of evidence regarding the elements of breach and causation: it contends Nelson failed to identify evidence that would allow a jury to find that a dangerous condition caused Nelson's injury. MSJ at 2.

Costco undoubtedly owed a duty to Nelson—a business invitee—to prevent or warn him of unreasonably dangerous conditions on its premises. *See Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010) ("[L]and possessors owe a duty to invitees to discover unreasonably dangerous conditions on the land and to either correct them or warn of them.").

The Kentucky Supreme Court has adopted a "burden-shifting approach to premises liability cases involving injuries to business invitees." *Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003). Under that framework, the plaintiff bears the burden of establishing that:

14

1) "he or she encountered a foreign substance or other dangerous condition on the business premises;
2) "the encounter was a substantial factor in causing the accident and the customer's injuries; and
3) "by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees."

*Id.* (citing *Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431, 435–36 (Ky. 2003)). Proof of these factors "creates a rebuttable presumption sufficient to avoid a summary judgment or directed verdict, and 'shifts the burden of proving the absence of negligence, i.e., the exercise of reasonable care, to the party who invited the injured customer to its business premises.'" *Id.* Kentucky courts have applied this burden-shifting framework to trip-and-fall cases involving motorized scooter and curb accidents. *See, e.g., Festervan v. Kroger Co.*, No. 2020-ca-822, 2021 WL 647122, at *4 (Ky. Ct. App. Feb. 19, 2021).

Nelson and Costco disagree extensively over the applicable legal framework. Costco argues that it did not owe a duty to Nelson in the first place, despite the burden-shifting framework described above, based on the "open and obvious doctrine"—which according to Costco eliminates a premises owner's *duty* where the nature of a risk is obvious. In Costco's view, because the curb was an obvious condition from which the store had no reason to anticipate injury to its customers, "Costco had no duty to warn [Nelson] of a dangerous condition." MSJ at 11–14. Nelson, for his part, argues that burden shifting does not apply to premises liability cases based in negligence, and that the open and obvious doctrine is "dead as a doornail." MSJ Response at 1.

Neither party has the law quite right. The Kentucky Supreme Court, after a string of decisions addressing the status of the "open and obvious doctrine, has defined the doctrine:

An open and obvious condition is one in which the danger is known or obvious. The plaintiff knows of a condition when she is aware, not only of the existence of the condition or activity itself, but also appreciates the danger it involves. And the condition is obvious when both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 906 (Ky. 2013), as corrected (Nov. 25, 2013) (cleaned up) (citing R.2d Torts § 343A(1) cmt. b). For decades, whether the doctrine applied as a matter of the duty element or the breach element remained unclear—but largely irrelevant—under Kentucky's contributory-negligence framework. *McIntosh*, 319 S.W.3d at 389. "In either event, the injured invitee could not recover." *Id.* (quoting *Harrison v. Taylor*, 115 Idaho 588, 592 (1989)). But after Kentucky adopted the comparative-fault regime, the Supreme Court clarified that the doctrine raises a factual question of breach, rather than a legal question of duty. *Id.* This is significant: "if the invitee's voluntary encounter with a known or obvious danger were deemed to excuse the landowner's duty, then there would be no negligence to compare—and, therefore, no recovery." *Id.* (citation omitted). But because the existence of an obvious risk goes to breach, "the injured invitee might recover, albeit in a diminished amount." *Id.*

15

The open-and-obvious doctrine, therefore, is "alive," but applies to the question of breach rather than duty. *Shelton*, 413 S.W.3d at 911.

This line of precedent also bears on Nelson's argument that the burden-shifting framework does not apply in this case. Nelson cites two Kentucky Supreme Court decisions that did not discuss the burden-shifting framework in premises-liability suits: *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010), and *Shelton v. Kentucky Easter Seals*, 413 S.W.3d 901 (Ky. 2013). On this basis, Nelson asks the Court to apply a standard negligence analysis, allowing a jury to decide the questions of breach and causation without the constraints of the more targeted burden-shifting inquiry set forth in earlier Kentucky Supreme Court decisions. *See, e.g., Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003); *Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431, 435–36 (Ky. 2003).

*McIntosh* and *Shelton*, however, do not purport to overrule *Martin*, *Lanier*, and the burden-shifting framework they applied. Rather, they simply remained mute on the burden-shifting question while addressing the open-and-obvious doctrine. In *McIntosh*, a paramedic sued a hospital after she tripped over a curb between the ambulance dock and the emergency room doors. 319 S.W.3d at 387–88. And in *Shelton*, a woman fell after her foot got tangled in cords beside a hospital bed. 413 S.W.3d at 904. In both cases, the Supreme Court recognized that some conditions may be so notorious that they would not create an unreasonable and foreseeable risk—meaning the landowner would not bear negligence liability if those open and obvious conditions injure someone. *Id.* at 911–14.

The open-and-obvious doctrine, therefore, does not displace the burden-shifting framework for premises liability; it simply functions as a defense to liability that might otherwise exist under that framework. As Costco notes, Kentucky courts have applied the burden-shifting framework to premises liability cases on many occasions. *See, e.g., Festervan v. Kroger Co.*, 2021 WL 647122, at *4; *Martin*, 113 S.W.3d at 98; *Lanier*, 99 S.W.3d at 435–36; *Jones v. Abner*, 335 S.W.3d 471, 475 (Ky. App. 2011). Nelson is also wrong to argue that the framework applies only when the plaintiff encounters a "foreign substance." MSJ Response at 1. The plain language of these decisions refers to "other dangerous conditions." *Martin*, 113 S.W.3d at 98.

### B. Nelson's lack of evidence

**1. *Dangerous condition.*** Applying the burden-shifting framework to Nelson's injury, the first question is whether the record indicates he encountered a dangerous condition on Costco's premises. At the summary judgment stage, evidence "must be produced"—a "merely … theoretical argument suggesting the logical possibility of the existence of facts pointing to a different conclusion" does not suffice. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1134 (6th Cir. 1986).

Nelson lacks any such evidence in light of the inadmissibility of Birnbach's testimony on breach. Birnbach's own subjective opinions—unsupported by any external research, discipline, or custom—do not establish that Costco's sidewalk and curb violated any external code or custom, or that using a scooter there amounted to an "unreasonably dangerous condition." And no other

evidence supports Nelson's position. He identifies no similar prior accident, no custom of a different design standard, no faulty construction or maintenance, and no notice or knowledge on the part of Costco that a dangerous condition existed. No evidence—from the expert or otherwise—indicates that the grade or width of the sidewalk failed to comply with safety regulations and Costco's duty of care. Birnbach did not even measure the spot of the accident. But Peterman's analysis, which *is* admissible, supplies evidence (which now stands unrebutted) that the curb and sidewalk complied with the relevant code provisions.

**2. *Open and obvious.*** Peterman's conclusion accords with the most analogous Kentucky caselaw concerning the open-and-obvious defense. The Kentucky Court of Appeals, in *Festervan*, held that the juncture between a sidewalk and parking lot was an open and obvious condition that did not require a store owner to warn patrons or redesign the curb. In that case, a shopper fell off a motorized scooter that tipped over a curb. Like Nelson's accident, no one saw Festervan fall. Like Nelson, Festervan offered no evidence indicating that the sidewalk juncture was an unreasonably dangerous condition. And like Nelson, Festervan lacked any proof of causation, relying only on his speculation that the curb must've caused the accident. The Kentucky Court of Appeals held that absent eyewitnesses or other proof of "an actual encounter with a dangerous condition … that caused the injury," the court lacked any basis to conclude that the defendant, Kroger, breached its duty of care. *Festervan*, 2021 WL 647122, at *3.

Here we would reach this same result if we apply the open-and-obvious doctrine instead of the first prong of the burden-shifting framework. The open-and-obvious defense supports summary judgment if "the obviousness of danger is compelling, so that the court might take the case from the jury." *Shelton*, 413 S.W.3d at 912, 916. If "reasonable minds cannot differ" about the evidence, "it would be unreasonable for a jury to find breach or causation." *Id.* And the Kentucky Supreme Court has expressly identified examples of open and obvious risks in the context of a retail parking lot. A "small pothole in the parking lot of a shopping mall; steep stairs leading to a place of business; *or perhaps even a simple curb*," the court recognized, are examples that may *not* create unreasonable risks. *Id.* at 914 (emphasis added).

The condition Nelson encountered is similar to one addressed in *McCoy v. Family Dollar Store of Kentucky*. There the Kentucky Court of Appeals concluded that an undamaged wheel stop demarcating parking spots in a Family Dollar lot was an open and obvious feature, not an unreasonably dangerous condition necessitating warning or correction. 525 S.W.3d 93, 99–100 (Ky. Ct. App. 2017). The court noted that "there are wheel stops located at innumerable businesses throughout the Commonwealth of Kentucky." *Id.* at 96. And the plaintiff failed to put any evidence in the record establishing that wheel stops were unreasonably dangerous. *Id.* at 99. Under these circumstances, the court deemed that Family Dollar had acted reasonably in dividing its parking lot with wheel stops. *Id*. at 99. The law and the evidence here would not support a different conclusion with respect to Costco's own parking lot and curb.

Nelson's only remaining caselaw support comes from *McIntosh*. But as noted in subsequent caselaw, the circumstances of *McIntosh* were unusual: the curb was "unique in both location and size;" the plaintiff used an emergency entrance for paramedics rushing trauma patients; paramedics using the entrance naturally would be distracted and could fail to notice the curb; and the hospital could foresee that "a paramedic[] would proceed despite the risk posed by

17

the curb." *Shelton*, 413 S.W.3d at 915 (describing facts of *McIntosh*); *see also McCoy*, 525 S.W.3d at 96 (affirming summary judgment, in light of *Shelton* and *McIntosh*, based on open-and-obvious doctrine *and* lack of evidence regarding an unreasonably dangerous condition). None of these exacerbating factors existed for Nelson. The portion of the store entrance flush with the parking lot is much wider than the section the idling minivan occupied, allowing Holt to pull up at the front had he chosen to do so. This would've eliminated any reason for Nelson to drive to a narrower part of the storefront in the first place. Birnbach Addendum at Figure 2A. Nothing in the record indicates that the store design should have hurried, distracted, or otherwise impelled Nelson when he drove the cart to the spot of the accident.

3. **Statutory presumption**. Further underscoring this conclusion is Kentucky law establishing a statutory presumption that the curb is *not* defective in its design or construction:

> In any action alleging defective building design, construction, materials, or supplies where the injury, death, or property damage occurs more than five (5) years after the date of completion of construction or incorporation of materials or supplies into the building, there shall be a presumption that the building was not defective in design, construction, materials, or supplies. This presumption may be overcome by a preponderance of the evidence to the contrary.

K.R.S. § 198B.135; *see also Faller v. Endicott-Mayflower, LLC*, 359 S.W.3d 10, 12 (Ky. Ct. App. 2011) (affirming an earlier opinion that partly relied on K.R.S. § 198B.135).

This Costco store operated for 11 years before Nelson's injury. The general manager testified that between the years of 2013 and 2019, the construction of the curb did not change. Apparently none of the thousands of people who traversed the sidewalk and curb had been injured. Motion for Summary Judgment at 11. Nelson cannot point to record evidence that could overcome this presumption and meet his burden to establish the existence of a dangerous condition. On this basis, as well, Costco deserves summary judgment under the Kentucky statutory presumption. He has not identified evidence that could overcome the presumption that no unreasonably dangerous condition existed. *See Faller*, 359 S.W.3d at 12.

4. **Causation**. Nelson's record evidence also falls short of the second prong of Kentucky's burden-shifting framework: causation. The caselaw asks whether the alleged dangerous condition was a "substantial factor in causing the accident." No such evidence exists. No eyewitnesses or cameras captured the accident. Nelson doesn't remember what happened. Although Birnbach and Nelson's attorney speculates about how the accident occurred, neither offer any proof establishing the likelihood of their scenarios. MSJ Response at 5, n. 4; Birnbach Dep. at 49–50. "[T]he question should be taken from the jury when the evidence is so unsatisfactory as to resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (citing *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)). The only direct evidence of how the accident happened is Holt's hearsay testimony, which cuts in precisely the opposite direction: Nelson told Holt that "he guessed he drove off the curb." MSJ at 4.

When assessing causation, the Kentucky Supreme Court has held that the mere presence of a dangerous condition does not support an inference that the condition in fact caused the

incident. *Klinglesmith v. Estate of Pottinger*, 445 S.W.3d 565, 568–69 (Ky. App. 2014). That is, absent evidence, the Court may not assume that the alleged defect was a factor in Nelson's fall. And without proof of this essential element—an actual encounter with a dangerous condition that caused his accident—Nelson cannot establish a genuine dispute about this essential element of his case. *See Festervan*, 2021 WL 647122, at *4; *see also Klinglesmith*, 445 S.W.3d at 569 (summary judgment proper where the plaintiff did not know why she fell).

\* \* \*

In light of Nelson's failure at prongs one and two, there is no reason to address the third prong—that a dangerous condition rendered the premises unreasonably unsafe for customers. He cannot make out a claim for premises liability based on this record.

## CONCLUSION

The Court **GRANTS** in part Costco's motion to strike Nelson's expert testimony (DN 60), **GRANTS** in part Nelson's motion to exclude expert testimony in part (DN 62), and **GRANTS** Costco's motion for summary judgment (DN 59).

Benjamin Beaton, District Judge
United States District Court

June 16, 2021